## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Prince Ja Quay El, Moorish American National, f/k/a Derrick Jacquay Roberson, <br><br> Plaintiff, <br><br> v. <br><br> Jen Pfeifer, Steele County Jail Employee; Owatonna Police Officer; Two Unknown Police Officers, City of Owatonna; Daniel A. McIntosh, County Attorney; and Unknown Police Officer, <br><br> Defendants. | Case No. 15-cv-0183 (JNE/HB) <br><br><br> **REPORT AND RECOMMENDATION** |

Prince Ja Quay El, Attn: Derrick Roberson, 210 Holly Street, Owatonna, MN 55060, pro se

Jason M. Hill, Jardine, Logan & O'Brien, PLLP, 8519 Eagle Point Blvd., Suite 100, Lake Elmo, MN 55042, for Jen Pfeifer and Daniel A. McIntosh

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendants Jen Pfeifer and Daniel A.

McIntosh's (hereafter Defendants) Motion for Summary Judgment[1] [Doc. No. 27].

Plaintiff Prince Ja Quay El filed his Complaint for Violation of Civil Rights Under

42 U.S.C. § 1983 on January 28, 2015, alleging that his civil rights were violated in

connection with his arrest and detention for failing to register as a predatory offender

---

[1] Although Defendants' motion is titled Motion for Summary Judgment, it also includes what is in effect a motion to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 41(b) for failure to prosecute.

under Minn. Stat. § 243.166. For the reasons set forth below, the Court recommends granting Defendants' motion and recommends that Plaintiff's claims against McIntosh and Pfeifer be dismissed in their entirety and with prejudice.

## I.   Background

### A.   Procedural Background

Plaintiff filed his § 1983 Complaint on January 28, 2015 (Compl. [Doc. No. 1].) Plaintiff had difficulty serving Defendants, so the case progressed slowly.  On March 1, 2016, the Honorable Joan N. Ericksen adopted this Court's Report and Recommendation and dismissed the claims against Defendant Timothy Hassing [Doc. No. 26].  Defendants Jen Pfeifer and Daniel A. McIntosh filed their motion for summary judgment on July 26, 2016 [Doc. No. 27].  Plaintiff did not file a response within the time permitted under the Pretrial Scheduling Order [Doc. No. 24].  On August 26, 2016, the Court issued an order regarding briefing on Defendants' Motion for Summary Judgment [Doc. No. 33].  The Court ordered Plaintiff to file his response and supporting documents by September 19, 2016.  Defendants would then be required to file their reply and supporting documentation by October 3, 2016.  That order was returned as undeliverable on September 12, 2016 [Doc. No. 34].  The Court requested it be remailed, but it was again returned as undeliverable on September 29, 2016 [Doc. No. 35].  Plaintiff has not contacted the Clerk's Office or this Court to update his address.  To date, Plaintiff has filed no response to the summary judgment motion, and in fact has not filed anything at all in this case since May 4, 2015, more than a year and a half ago.

Defendants report that the only communication from Plaintiff to their counsel was

on December 3, 2015, when Plaintiff telephoned with a settlement offer.  (Hill Decl. ¶ 2 [Doc. No. 30].)  On January 25, 2016, defense counsel informed Plaintiff that they were rejecting his settlement offer, and they served a notice of deposition on him.  (Hill Decl. ¶ 5-6.)  Plaintiff failed to appear for his deposition on May 27, 2016.  (Hill Decl. ¶ 4.)  He has served no discovery requests on Defendants, and he never contacted defense counsel with his availability for the deposition as they had requested.  (Hill Decl. ¶ 3-5.)

### B.    Undisputed Facts

Plaintiff's Complaint, which was signed under penalty of perjury, is difficult to follow, but generally speaking it describes Plaintiff's arrests in August 2011, December 2011, and March 2012, with subsequent periods of detention, arising out of a charge that Plaintiff failed to register as a predatory offender, a charge that was later dismissed for lack of probable cause.  (*See generally* Compl. at 7-8 [Doc. No. 1].)  Reading the Complaint together with the official records filed by Defendants, to which Plaintiff made no objection and offered no evidence in opposition, the undisputed facts surrounding Plaintiff's arrests and detention emerge as follows:  On August 12, 2011, Plaintiff was arrested by the City of Owatonna Police Department on probable cause for theft and an outstanding warrant from Olmsted County in Minnesota.  (Hill Decl. Ex. D at 9 [Doc. No. 30-1].)  Sergeant Paul A. Prissel of the Steele County Detention Center conducted the initial assessment after Plaintiff's arrest.  (*Id.* at 9-10.)  It was determined that Plaintiff would be released on the theft charges.  (*Id.* at 9.)  During the release process, however, Sergeant Prissel reviewed warrant information from the Minnesota Bureau of Criminal Apprehension ("BCA").  (*Id.* at 10.)  He determined Plaintiff was "NON-COMPLIANT,"

so he contacted Defendant Jen Pfeifer, Programs Coordinator at the Steele County

Detention Center and the facilities contact person for the predatory offender registration

process. (*Id.*) Pfeifer instructed Sergeant Prissel to contact the BCA directly, and the

BCA confirmed that Plaintiff was non-compliant with the predatory offender registration

process and should be arrested. (*Id.*) An agent from the BCA contacted the City of

Owatonna Police Department to arrange for Plaintiff's arrest. (*Id.*) Owatonna

Investigator Joel Hunt then detained, interviewed, and arrested Plaintiff. (Hill Decl.

Ex. F at 19 [Doc. No. 30-1].)

Plaintiff was again arrested on December 12, 2011, secondary to a warrant from

Olmsted County. (Hill Decl. Ex. G at 30 [Doc. No. 30-1].) After his arrest and booking,

Plaintiff was set to be released on that warrant, but he refused to complete the paperwork

to complete his predatory offender registration. (Hill Decl. Ex. H at 34-35 [Doc. No. 30-

1].) Detective Timothy Hassing requested that another officer from his department

respond to assist him in the situation. (*Id.* at 34-36.) Officers Joseph Swenson and

Micaiah Becker responded. (*Id.* at 37.) Detective Hassing informed them that Plaintiff

was required to register as a predatory offender, but was refusing to do so. (*Id.* at 38.)

Officers Swenson and Becker subsequently arrested Plaintiff for refusing to register. (*Id.*

at 34-38.)

After his December 2011 arrest, Defendant County Attorney Daniel McIntosh and

the Steele County Attorney's Office prosecuted Plaintiff for failing to register as a

predatory offender. Plaintiff, with the assistance of advisory counsel, filed a motion to

dismiss for lack of probable cause, alleging that the specific offenses for which he had

previously been convicted did not trigger a duty to register under the statute.  His motion

was denied by Steele County District Court Judge Joseph A. Bueltel on March 1, 2012.

(Hill Decl. Ex. K at 47 [Doc. No. 30-1].)

   Plaintiff was once again arrested on March 5, 2012, on charges of driving while

under the influence, refusing to submit to a chemical test, and giving a false name to a

police officer.  (Hill Decl. Ex. S at 70 [Doc. No. 30-1].)  He remained in the Steele

County Detention Center through October 22, 2012.  (*Id.* at 70-71.)  During his time

there, he was disciplined for rule violations, including episodes of violence and

threatening behavior.  (*Id.* at 72-83 (describing incident where contraband items were

discovered in Plaintiff's cell, incident where Plaintiff was locked down after yelling and

swearing, incident where Plaintiff injured another inmate, and incident where Plaintiff

was disciplined for theft).)   In June 2012, Plaintiff was preparing to be released and met

with Amanda Halverson of Steele County Human Services to discuss his treatment

options following release.  She noted that "his options are significantly limited due to his

status as a predatory offender (i.e. CARE St. Peter)."  (*Id.* at 85.)  At the end of June,

Plaintiff filed an inmate grievance with regard to Halverson, or another Steele County

Human Services employee.  (*Id.* at 86.)  He also complained about a statement made by

Jessica Fenlason, Programs Assistant at the Steele County Detention Center.  (*Id.*)

Fenlason had allegedly stated that because Plaintiff's release status was unknown due to

his ongoing criminal prosecution for failure to register, they could not move forward with

the treatment placement.  (*Id.* at 87.)  On July 2, 2012, Fenlason sent a note to Plaintiff

stating that Halverson would meet with him on July 13, 2012.  (*Id.* at 92.)[2]

On October 2, 2012, Plaintiff asked to follow up with Fenlason regarding his treatment.  (*Id.* at 93.)  Two days later, Halverson sent a fax to Fenlason confirming that Plaintiff was scheduled to be admitted to residential treatment at CARE St. Peter on October 10, 2012, his scheduled release date.  (*Id.* at 94.)[3]  On October 9, 2012, Plaintiff filed an inmate grievance alleging that Fenlason had told him he would need to register as a predatory offender and that when he refused, she contacted the treatment facility to inform them of his refusal and they took him off the list.  (*Id.* at 95.)[4]  Pfeifer reviewed the grievance, and after an independent investigation, she noted that it was not grievable because Plaintiff had misstated the facts.  (*Id.*)  The record contains no other mention of Pfeifer in connection with Plaintiff's treatment placement.  On October 10, 2012, Fenlason sent a note to Plaintiff stating that CARE St. Peter was "officially declining Mr. Roberson due to his behaviors not sitting well with the population they have right now (i.e. high number of committed males)."  (*Id.* at 97.)[5]  The note did not mention Plaintiff's registration status as a reason for the decision not to admit him for treatment.

Meanwhile, in August 2012, the Minnesota Court of Appeals issued a decision in *State v. Patterson*, 819 N.W.2d 462 (Minn. Ct. App. 2012), interpreting the language of the predatory offender registration statute with regard to the convictions that trigger the

---

[2]  The names on this note within Defendants' exhibit are redacted, but Defendants' memorandum represents that Halverson and Fenlason are the individuals to whom the note refers.

[3]  Again, the names on the exhibit are redacted but are supplied in Defendants' memorandum.

[4]  Fenlason's name is redacted from this form.

[5]  The names are also redacted on this letter.

duty to register.  Judge Bueltel wrote to McIntosh and Plaintiff's newly assigned public

defender on August 22, 2012, informing them of that decision and suggesting that it

might affect the prosecution of Plaintiff for failure to register and the court's probable

cause determination.  (Hill Decl. Ex. N at 59 [Doc. No. 30-1].)  On October 16, 2012,

Judge Bueltel issued a nunc pro tunc order dismissing the failure to register charge for

lack of probable cause.  (Hill Decl. Ex. Q at 65 [Doc. No. 30-1]; Compl. Ex. at 2 [Doc.

No. 1-1].)  The court based its decision on the Court of Appeals' decision in *Patterson*.

(*Id.* at 68.)  The next day, McIntosh sent the following letter to the BCA and copied

Plaintiff.

> Attached, please find an Order issued by the Honorable Joseph A. Bueltel
> regarding Mr. Roberson. Based on an August 2012 Court of Appeals
> decision, Judge Bueltel found that Mr. Roberson is not a person subject to
> registration. I have decided not to appeal this decision based on the Judge's
> reasoning and the current state of the law.
>
> I believe Mr. Roberson is currently listed as "Noncompliant."  I am writing
> to request that the BCA remove Mr. Roberson from the Predatory Offender
> Registry based on the Court's Order so that he is not mistakenly arrested for
> a POR violation is this or any other jurisdiction.

(Hill Decl. Ex. R at 69 [Doc. No. 30-1]; Compl. Ex. at 1 [Doc. No. 1-1].)

Plaintiff's Complaint refers to one other period of detention in the Steele County

Detention Center for which he brings claims.  (Compl. at 8.)  On November 11, 2014,

Plaintiff was booked into the Steele County Detention Center on various outstanding

charges and warrants.  (Hill Decl. Ex. T at 100 [Doc. No. 30-1].)  He was held until

December 24, 2014.  (*Id.* at 102.)  During this detention, he filed a grievance that

evidence had been taken from him.  (*Id.* at 104-05.)  The grievance, submitted by

Defendants, notes that the documents were returned.  (*Id.*)  Plaintiff also now complains that he was not allowed to contact court administration through the jail's telephone system, he was not allowed to do legal research, and he was denied "the right to pay for copies of civil proceedings paperwork."  (Compl. at 6 [Doc. No. 1].)  There is no record of any formal grievance regarding access to telephones, access to legal research, or the provision for copies.  The records do indicate, however, that during this time Plaintiff had advisory counsel, and numerous letters and motions were filed on his behalf that included copies of case law, statutes, and other legal authority.  (Hill Decl. Ex. U at 106-40 [Doc. No. 30-1].)

### C.     Plaintiff's Claims for Damages

Plaintiff alleges that as a consequence of his arrest and charges for failure to register as a predatory offender, and the resulting periods of detention, he incurred economic and property loss leading, among other things, to his eviction from his apartment and the seizure of his car, emotional distress as a result of defamation of his character and damage to his reputation in the community, and damage to his relationship with his girlfriend and children.  As for the allegations relating to his 2014 detention, he does not identify specific damages arising out of the alleged denial of access to telephone, legal research, and copying.

## II.     Applicable Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might

affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In considering a motion for summary judgment, the court views the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).

The party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. "Like any other civil litigant," a pro se plaintiff must respond to a defendant's motion for summary judgment "with specific factual support for his claims" sufficient to sustain a jury verdict in his favor. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001); *see Anderson*, 477 U.S. at 249-52.

## III.   Discussion

### A.   Dismissal for Failure to Prosecute

Fed. R. Civ. P. 41(b) states:

If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19— operates as an adjudication on the merits.

"A district court has the power to dismiss a litigant's cause of action when the

litigant fails to comply with the court's orders or for intentional delay." *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1259-60 (8th Cir. 1997).  This power allows district courts "to ensure the expeditious handling of cases and to protect the rights of opposing parties to be free of prejudice caused by a litigant's dilatory conduct." *Id.* at 1260.  The Eighth Circuit has recognized "the importance of the expeditious treatment of cases in the district courts and the right of parties not to suffer prejudice as a result of an opposing party's dilatory conduct." *Mann v. Lewis*, 108 F.3d 145, 147 (8th Cir. 1997). Rule 41(b) "is intended as a safeguard against delay in litigation and harassment of a defendant."  Wright & Miller, Federal Practice & Procedure: Civil § 2370 (3d ed. 2008).

    Since serving Defendants McIntosh and Pfeifer in April 2015, filing his Complaint in January 2015, and paying his filing fee in June 2015, Plaintiff has done nothing to prosecute this action or to respond to Defendants' efforts to defend against it, other than to communicate a settlement demand to Defendants in December 2015.  He did not serve any discovery requests on Defendants.  He did not appear for his properly noticed deposition or contact Defendants to reschedule the deposition.  He did not respond to this Court's Order to Show Cause why his Complaint should not be dismissed for failure to serve Defendant Timothy Hassing, as a result of which Hassing was dismissed from the case [Doc. No. 26].  He has not kept this Court apprised of his current address despite directions for him to do so [Doc. No. 23 at 3; Doc. No. 26 at 4], and this Court's Order regarding briefing of Defendants' Motion for Summary Judgment was returned from two different addresses as undeliverable [Doc. Nos. 34, 35].  Finally, Plaintiff did not respond in any way or submit any evidence in opposition to Defendants' motion for summary

judgment.

Accordingly, this Court recommends that the claims against Defendants Pfeifer and McIntosh be dismissed under Federal Rule of Civil Procedure 41(b) for failure to prosecute. The question then becomes whether that dismissal should be with or without prejudice. Dismissal with prejudice is "an extreme sanction that should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay." *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000). The court must "weigh its need to advance its burdened docket against the consequences of irrevocably extinguishing the litigant's claim and consider whether a less severe sanction could remedy the effect of the litigant's transgressions on the Court and the resulting prejudice to the opposing party." *Id.* (quoting *Hutchins*, 116 F.3d at 1260). In this case, Plaintiff has failed to take the minimal steps to advance his suit, has allowed the time set by the Court for the parties to conduct discovery and motion practice to pass by, and has impeded Defendants' attempts to gather information about his claims by failing to attend his deposition. In addition, he has shown his lack of interest in pursuing his case or even in following developments in his case by failing to provide an address to the Court where he can be reached. Accordingly, the Court concludes this is a case that justifies dismissal with prejudice for failure to prosecute.[6]

### B.  Prosecutorial Immunity for Defendant McIntosh

Reading Plaintiff's Complaint very liberally, Plaintiff appears to claim that

---

[6] *See also Perry v. Boston Sci. Family*, No. 13-cv-00733 (JRT/TNL), slip op. at 1 (D. Minn. Oct. 28, 2015) (dismissing claims with prejudice for failure to prosecute where the plaintiff failed to respond to two orders requiring that he pay his filing fee).

McIntosh violated his civil rights by prosecuting him for failure to register as a predatory

offender when, as it turned out, there was no probable cause for the charge.  As the

Eighth Circuit has explained, "[p]rosecutors may be entitled to either absolute or

qualified immunity from civil liability under 42 U.S.C. § 1983 for actions undertaken

pursuant to their official duties."  *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266

(8th Cir. 1996).  A prosecutor receives absolute immunity when "acting as advocate for

the state in a criminal prosecution."  *Id.*  Prosecutorial functions covered by absolute

immunity include "the initiation and pursuit of a criminal prosecution, the presentation of

the state's case at trial, and other conduct that is intimately associated with the judicial

process."  *Id.*  A prosecutor receives only qualified immunity when pursuing "actions in

an 'investigatory' or 'administrative' capacity."  *Id.* (citing *Buckley v. Fitzsimmons*,

509 U.S. 259, 273 (1993)).  Courts look to the nature of the prosecutorial function

performed.  *Id.* at 1266-67 (citing cases holding a prosecutor receives absolute immunity

from activity in initiating a prosecution or participating in a probable cause hearing, but is

eligible for qualified immunity for speaking to the media and giving legal advice to the

police).

As Defendants acknowledge, Plaintiff's claims against McIntosh are not clearly

defined.  But there is nothing in the Complaint that even hints at claims arising out of

anything other than McIntosh's decisions and actions in his prosecutorial function in

pursuing the failure to register charge.  Insofar as Plaintiff argues McIntosh should have

dismissed the charge against him, a prosecutor is entitled to absolute immunity for his

decision of whether and when to dismiss a charge.  *See Imbler v. Pachtman*, 424 U.S.

409, 431 n.33 (1976). McIntosh is therefore protected by absolute immunity in his role as prosecutor on behalf of the state, and Plaintiff's claims against him should be dismissed with prejudice on this independent ground.

### C.    Qualified Immunity

Having concluded that prosecutorial immunity bars Plaintiff's claims against McIntosh, the Court turns to whether Pfeifer is entitled to qualified immunity as to the claims against her. "Qualified immunity may protect government officials from liability under 42 U.S.C. § 1983, but not if their conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 527 (8th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). In analyzing a claim of qualified immunity, the Court considers: (1) whether the facts viewed in the light most favorable to Plaintiff support a conclusion that Defendant violated a constitutional right, and (2) whether the constitutional right at stake was "clearly established" at the time of the alleged violation "such that a reasonable official would have known that his or her actions were unlawful." *Id.* at 528 (citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009)). The Court has discretion which prong "should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. When a court concludes that a constitutional right was not violated, it need not address whether the right was clearly established at the time of the alleged violation. *Fields v. Abbott*, 652 F.3d 886, 894 (8th Cir. 2011).

Plaintiff's Complaint does not allege a specific constitutional right he claims the Defendants violated, let alone that Defendants knew or should have known they violated

a clearly established right.  Moreover, he has not offered any evidence to support any such claims in response to Defendants' Motion for Summary Judgment.  If, reading his Complaint liberally, he intended to allege that his substantive due process rights were violated by his arrest and detention on a failure to register charge that was later dismissed for lack of probable cause, the Court concludes that as a matter of law, Pfeifer is entitled to qualified immunity in connection with her conduct.  First, the record establishes only that Pfeifer, when asked by another officer about a "Non-Compliant" flag on Plaintiff's record, referred that officer to the BCA to inquire about Plaintiff's status and whether he was required to register as a predatory offender.  She did not make the decision to arrest or detain him.  Second, prior to the Minnesota Court of Appeals' decision in *Patterson*, the meaning of the statute and whether someone with Plaintiff's record was required to register was unsettled, and there is no basis upon which a finder of fact could conclude that Pfeifer should have known Plaintiff was not required to register or that her actions were in any other way objectively unreasonable.  Indeed, Judge Bueltel concluded there was probable cause for the charge of failure to register and denied Defendant's Motion to Dismiss in March 2012, and it was only after *Patterson* was issued in August of that year that he reconsidered his decision.

As for any claim against Pfeifer concerning the unsuccessful efforts to have Plaintiff placed in a treatment facility following his release in 2012,  or the alleged denial of access to telephone, legal research, and copying in 2014, there is even less in Plaintiff's allegations about her role, let alone to suggest that her actions were objectively unreasonable.  With regard to her role in his efforts to secure post-release treatment, he

14

says only that she "instruct[ed] Programs to mandate [him] to Register as a Predator before leaving Steele County Jail to attend treatment in St. Peter Minnesota with no authority of law after Court approve.  It should be noted that I have no Register as a Predatory offender."  (Compl. at 8.)  But there is no support in the record for his statement that she "instruct[ed] the Programs" that he had to register as a predatory offender before he could be accepted for treatment.  On the contrary, the only role she seems to have played was a purely tangential and discretionary one: to review his grievance on this issue, which she denied on the ground that he had misstated the facts.

As to access to resources for Plaintiff's criminal case defense, nothing in the Complaint indicates why or to what extent Pfeifer denied such access.  Plaintiff appears to allege that he was not allowed to contact court administration through the jail's telephone system, he was not allowed to do legal research, and he was denied "the right to pay for copies of civil proceedings paperwork."  But to prove his claim that Pfeifer denied him access to the courts, Plaintiff must establish that her actions denied him "an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."  *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (quotation omitted). Prison officials must allow inmates "meaningful access to the courts," but this does not entitle prisoners to a "freestanding right to a law library."  *Entzi v. Redmann*, 485 F.3d 998, 1005 (8th Cir. 2007).

15

Here, Plaintiff was appointed advisory counsel and then represented by a public defender.  The Eighth Circuit has held that representation by counsel with regard to the affected claim or criminal charge will provide a "reasonably adequate opportunity" to litigate a claim.  *Entzi*, 485 F.3d at 1005; *Schrier v. Halford*, 60 F.3d 1309, 1314 (8th Cir. 1995); *Quam v. Minnehaha County Jail*, 821 F.2d 522, 523 (8th Cir. 1987) (per curiam).  Moreover, Defendants introduced with their Motion for Summary Judgment numerous letters and motions Plaintiff or his counsel filed, and those filings included copies of case law, statutes, and other legal authority.  There is no evidence that Pfeifer prohibited telephone access, prohibited him from doing legal research, or denied his "right" to paper copies of his civil proceedings, let alone that any limitations she may have imposed were objectively unreasonable.

Thus, as with Plaintiff's other claims against Pfeifer, the Court thus recommends dismissing them on the basis of qualified immunity.

### D.    Failure to Establish a Genuine Dispute of Material Fact as to § 1983 Claims

In order to demonstrate a deprivation liberty without due process under the Fourteenth Amendment, he must show that one or both Defendants acted with a deliberate indifference to his rights.  *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014).  Specifically as to claims against prison officials, the Eighth Circuit has adopted a subjective analysis for deliberate indifference.  *Id.* at 1117-18; *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In other words, the official must have knowledge of the

constitutional risk of his or her actions, and then deliberately disregard that knowledge. *Id*.

For the same reasons already discussed with regard to the Court's recommendation that Plaintiff's claims against Pfeifer be dismissed on grounds of qualified immunity, his claims may be dismissed in the alternative because Plaintiff has not introduced evidence sufficient to show that she is liable under § 1983 because she was deliberately indifferent to his rights.  Because the Court has recommended that Plaintiff's claims be dismissed on other, independent grounds, the Court will not engage in a lengthy discussion of the other bases on which Plaintiff's claims fail, but notes the following:

First, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007).  In order to establish liability, a plaintiff must set forth facts demonstrating personal involvement in, or direct responsibility for, the alleged deprivation of his constitutional rights, *id.*, or a failure to properly train or supervise the officer alleged to have committed the constitutional violation.  *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989).  Even if his detention on charges of failure to register, his failure to be accepted for post-release treatment, and the limits on his access to telephone, legal research, and copying, were shown to violate his constitutional rights, Plaintiff has introduced no competent evidence from which a finder of fact could reasonable conclude that Pfeifer was directly responsible for any of those outcomes, let alone that she acted with a deliberate disregard for his rights.

17

Second, to the extent that Plaintiff's claim with regard to his failure to be accepted for post-release treatment could be characterized as a claim for denial of medical treatment under the Eighth or Fourteenth Amendments, *see Luckert v. Dodge County,* 684 F.3d 808, 817 (8th Cir. 2012), Plaintiff must prove that Pfeifer acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). In other words, he must prove that he suffered from a serious medical need, that he was deprived of treatment for that need, and that Pfeifer knew of a substantial risk of serious harm and disregarded that risk.  *Farmer*, 511 U.S. at 1977 (1984); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997); *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).  Here, there is no evidence in the record upon which a finder of fact could reasonably conclude that Pfeifer deliberately disregarded any serious medical need of Plaintiff.  In fact, the record does not even identify what Plaintiff's medical need was or the level of its severity.

Finally, as already noted, to prove his denial of access to the courts claims, Plaintiff must establish not only that Pfeifer denied him an opportunity to litigate a claim challenging his sentence or conditions of confinement in a court of law, but also that the denial "resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."  *Hartsfield*, 511 F.3d at 831.  Plaintiff has not shown that actual injury, and for that reason alone, any claims of denial of access to the courts must fail.

### E.     Costs and Disbursements

Rule 54(d)(1) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  "Rule 54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs."  *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013).  The Court therefore recommends granting Defendants their costs.

## IV.     Conclusion and Recommendation

Plaintiff was understandably frustrated by his arrest and detention on a charge that was ultimately dismissed after the Minnesota Court of Appeals clarified the interpretation of the applicable statute.  The Court's recommendation here does not discount that frustration or deny that he may have incurred damages as a result of those charges.  But in light of Plaintiff's failure to prosecute the case, and the absence of any evidence in the record that raises a genuine dispute of material fact upon which McIntosh or Pfeifer could be held liable liability for any such damages, they are entitled to judgment in their favor.

Therefore, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that

1. Defendants Jen Pfeifer and Daniel A. McIntosh's Motion for Summary Judgment [Doc. No. 27] be **GRANTED** in that Plaintiff's claims against Jen Pfeifer and Daniel A. McIntosh be **DISMISSED WITH PREJUDICE**; and

    2.  Defendants Jen Pfeifer and Daniel A. McIntosh's request for costs and

        disbursements be **GRANTED**.


Dated:  December 30, 2016       _s/ Hildy Bowbeer_____
                            HILDY BOWBEER
                            United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.